Eastern District of Kentucky
FILED
NOV 12 2008
At Ashland
LESLIE G. WHITMER
Clerk, U.S. District Court

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 08-CV-119-HRW

CONNIE DALE BAKER                                                           PLAINTIFF

VS:            **MEMORANDUM OPINION AND ORDER**

JOSEPH MEKO, ET AL.                                                      DEFENDANTS

Connie Dale Baker, the *pro se* plaintiff, is currently incarcerated in the Little Sandy Correctional Complex ("LSCC") which is located in Sandy Hook, Kentucky. Baker has filed a *pro se* civil rights complaint [Record No. 2]. He asserts claims under 42 U.S.C. § 1983. The Court has addressed his motion to proceed *in forma pauperis* by separate Order.

This matter is before the Court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

*Pro se* complaints are held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C. § 1915(e)(2), the district court can dismiss a case at any time if it determines the action is either frivolous or malicious, or fails to state a claim upon which relief can be granted.

## NAMED DEFENDANTS

Baker names five defendants: (1) Joseph Meko, the Warden of LSCC; the Kentucky Department of Corrections ("KDOC"); (3) the Commonwealth of Kentucky; (4) La Donna Thompson, Commissioner of the KDOC; and (5) Jack Conway, the Attorney General of Kentucky.[1] Baker asserts claims against the defendants in their official capacities only [Record No. 2, p. 8].

## CLAIMS

Baker alleges that the defendants violated his rights under the First, Eighth and Fourteenth Amendments of the United States Constitution.

## RELIEF REQUESTED

Baker seeks injunctive relief in the form of an Order requiring the defendants to provide him with various forms of medical treatment. Baker also asks the court to enjoin the defendants from committing other actions which he described in the Complaint.

## ALLEGATIONS OF THE COMPLAINT

Baker asserted various claims in his Complaint. The Court has summarized the claims, and organized them as follows:

(1) Denial of medical treatment for back, liver (Hepatitis C), legs, feet, heart, oversized hernia, lung, dental, and sleeping problems [Record No. 2, pp. 3 & 5].

(2) Retaliation for filing grievances, which Baker describes as threats of transfer to

---

[1] In his complaint, Baker listed the Attorney General of Kentucky as being "Jack *Conley*" [Record No. 2, p. 3]. The Court takes judicial notice of the fact the fact that Attorney General of Kentucky is "Jack *Conway*." The Clerk of the Court will be instructed to change the identification of this defendant in the CM/ECF docket sheet.

another prison; disciplinary action, and confinement in segregation [*Id*, pp.3-4].

(3)     Depression based on concerns that he will not be able to obtain "attention toward rehabilitation, reform, job training, programs or communicating with family beyond prison." [*Id.*, p. 5].

(4)     Inability to obtain adequate legal representation [*Id.*, pp. 5-6]

(5)     Inadequate meal servings and lack of nutritional content [*Id.*, p. 6].

(6)     Excessively expensive phone services [*Id.*, p. 7].

(7)     Excessive canteen charges and inability to use "coupons" [*Id.*].

(8)     Interference with, and reading of, his outgoing legal mail [*Id.*, p. 8].

(9)     Similar mistreatment experienced by other LSCC inmates as to all of the above issues [*Id.*].

Baker has submitted other requests and motions along with his Complaint. First, Baker asks for an Order allowing this action to proceed as a class action [Record No. 2, p.7]. Second, Baker filed a motion seeking the appointment of counsel [Record No. 6] Third, Baker filed a separate 100-page motion seeking a permanent injunction [Record No. 7]. Baker's motion for preliminary injunction is a rambling submission. Baker's goal in seeking injunctive relief appears primarily to concern the provision of medical treatment, although he refers to many of the issues set forth in his complaint.

## DISCUSSION
### 1. Request for Class Action Status

Baker asks the Court to designate proceeding as a class action. He claims that numerous other LSCC inmates have been denied medical care. Baker has attached the sworn statements of twenty-nine (29) other LSCC inmates [Record No. 7].

3

A district court has broad discretion in determining whether an action should be certified as a class action. *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir.2000), *cert. denied*, 531 U.S. 1148, 121 S.Ct. 1088, 148 L. Ed.2d 963 (2001). Under Fed. R. Civ. P. 23(a), four prerequisites exist for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) common questions of law or fact must be present among the class; (3) the claims of the representative party must be typical of the class; and (4) the representative party must be able to protect fairly and adequately the interests of the class. *Id* at 717.

Certification of a class is not warranted in this action. The law is well established that *pro se* prisoners are not able to represent fairly a class. *Palasty v. Hawk*, 15 Fed. Appx. 197, 200, 2001 WL 857209, 2 (6th Cir. (Ky.) 2001); *Ziegler v. Michigan*, 90 Fed. Appx. 808, 2004 WL 162545 (6th Cir. (Mich.) 2004); *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir.2000); and *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975).

To the extent that Baker wishes to incorporate condition of confinement claims of his fellow inmates, he is not allowed to do so. Constitutional claims are personal and cannot be asserted vicariously. *See Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997); *See also Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing *in propria persona* has no authority to represent anyone other than himself.").

Simply put, a party may not ordinarily assert the rights of others, *County Court of Ulster County v. Allen*, 442 U.S. 140, 154-55, 99 S. Ct. 2213, 60 L. Ed.2d 777 (1979). Therefore, in this action (08-CV-119-HRW) Baker may not assert constitutional claims on behalf of other LSCC inmates. *See Broderick v. Oklahoma*, 413 U.S. 601, 610 (1973); *McGowan v. Maryland*, 366 U.S. 420, 429 (1961).

Twenty-nine other LSCC inmates filed affidavits complaining about various activities at the LSCC [*See* Record No. 7-3 through 7-30].[2] If they wish to pursue their claim(s) in federal court, they must each file individual civil actions on their own behalf after complying with the KDOC "Corrections Policies and Procedures" ("CPP") 14.6 §II (J) or (K). Baker's request for designation as a class action will be denied.[3]

## 2. Alleged Retaliation Claims

Baker alleges that the defendants have retaliated against him for filing grievances about the conditions of his confinement at LSCC. Baker's complaint is completely devoid of documentation which would verify that he did in fact pursue the KDOC's administrative grievance process with respect to *any* of his claims. Irrespective of the lack of evidence of exhaustion, the Court will examine the merits of his First Amendment retaliation claims.

Baker alleges that the defendants have threatened him with transfer to another prison, disciplinary action and segregation. That claim lacks substance for two reasons. First, Baker's claims are speculative. Baker does not allege that he was in fact transferred to another prison, subjected to disciplinary action, or confined in segregation, only that unidentified prison officials threatened to transfer him in retaliation for filing grievances which he has not produced.

---

[2]

Some of the affidavits appear to be either copies of each other, or if not exact copies, they are very similar in format, presentation, and content (*i.e.*, the affidavits of Inmates Shelley [Record No. 7-3], Elpion [Record No. 7-4], Garlinger [Record No. 7-9], Aker [Record No. 7-10] and Lopez [Record No. 7-29 ).

[3]

The KDOC has promulgated a set of administrative regulations at 501 K.A.R. 6:020. These regulations, referred to as "Corrections Policies and Procedures" ("CPP"), govern prison procedures. CPP Number 14.6, entitled *Inmate Grievance Process*, explains the steps which state inmates are required to pursue in order to file a grievance.

5

To satisfy Article III's standing requirements, a plaintiff must show that he: "(1) has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81, 120 S. Ct. 693 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992)); *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 523-24 (6th Cir. 2001). Baker's allegations are based on pure conjecture, not existing facts. *Hughes v. Burkett*, 2006 WL 786794, *2 (6th Cir. 2006) (unpublished disposition) ("speculative, collateral consequences of prison disciplinary conviction are insufficient to create a liberty interest.")

Second, even assuming for argument's sake that Baker will be or has been transferred, his First Amendment claim would not be viable. To state a First Amendment claim for retaliation, a plaintiff must establish that: 1) he engaged in protected conduct; 2) he suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected conduct; and 3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999).

Baker cannot satisfy this test, because he cannot establish that a possible transfer to another prison qualifies as "adverse action." The Sixth Circuit has repeatedly held that transfer from one prison to another prison "cannot rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Smith v. Yarrow*, 78 Fed. Appx. 529, *543, 2003 WL 22400730, **12 (6th Cir.(Ohio) October

20, 2003); *Mandela v. Campbell*, 181 F.3d 102 (Table), 1999 WL 357825, at *3, (6th Cir. May 26, 1999); *Goss v. Myers*, 208 F.3d 213 (Table), 2000 WL 125905 (6th Cir., Jan. 28, 2000).

Moreover, the case law is well-established that transfers and prison assignments are functions wholly within the discretion of prison officials. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215, *reh'g denied*, 429 U.S. 873 (1976). Inmates do not have a liberty interest in either remaining free from discretionary transfers to less agreeable prisons or in seeking a transfer to a facility more desirable to them. *Meachum*, 427 U.S. 215. *See also Montanye v. Haymes*, 427 U.S. 236 (1976); *Grayson v. Rison*, 945 F.2d 1064 (9th Cir. 1991); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986).

Baker further alleges that he has been threatened with placement in segregation. Since 1995, the issue of whether a particular condition of confinement is cruel or unusual has been evaluated under the standard established in *Sandin v. Conner*, 515 U.S. 472, 484-86, 115 S.Ct. 2293, 132 L. Ed.2d 418 (1995).[4]

Under the *Sandin* analysis, the fact that Baker may have been threatened with placement in either a segregated housing unit or in Administrative Detention for temporary time periods would not impose an "atypical and significant hardship in relation to the ordinary incidents of

---

4

In *Sandin*, a state prisoner challenged his 30-day sentence to segregation after the prison adjustment committee followed a prison regulation in determining Sandin's guilt. The question was whether the regulation created a liberty interest which would have entitled him to substantial due process procedures established in *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).

The Supreme Court determined that neither the Due Process Clause nor the Hawaii prison regulation at issue presented a liberty interest such as to trigger due process procedural protections set forth in *Wolff*. The Court stated that " . . . Conner's discipline in segregated confinement did not represent the type of atypical, significant deprivation in which a state might conceivably create a liberty interest . . ." *Id.* at 483-84. *Sandin* focused not on the content of the regulations, but on the "nature of the deprivation" visited upon the inmate. *Id.* at 481.

prison life." *See Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir.1998) (two and one-half years in segregation during investigation of prisoner's involvement in riot did not deprive him of liberty interest without due process); *Merchant v. Hawk-Sawyer*, 37 Fed. Appx. 143, 145 (6th Cir. (Ky.), May 7, 2002) (not selected for publication in the Federal Reporter) (Merchant's maximum security classification, 21-month confinement in the special housing unit and transfer to a more secure facility were simply the "ordinary incidents of prison life" and did not implicate liberty interest protected by the Fourteenth Amendment).

Baker's First Amendment retaliation claim will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e).

### 3. Claims relating to Depression and Access to Rehabilitative Programs

Baker alleges that he suffers from depression concerning his inability to obtain "attention toward rehabilitation, reform, job training, programs or communicating with family beyond prison." [*Id.*, p. 5]. This claim suffers from two defects.

First, Baker speculates that he may not have access to certain rehabilitative programs. Baker is advised that prisoners enjoy no constitutional right to such programs, such as vocational training or rehabilitative programs, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), or prison jobs, *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49-50 (5th Cir. 1995); and *Carter v. Tucker*, 69 Fed. Appx. 678, 680 (6th Cir.2003) (loss of privileges and placement in segregation does not implicate a liberty interest sufficient to invoke the Due Process Clause).

Under *Sandin*, the loss of a mere privilege (such as telephone access or participation in a rehabilitative program) would not qualify as an atypical or significant hardship in relation to the incident of prison life under the Eighth Amendment. These claims will be dismissed.

Second, Title 42 U.S.C. § 1997e(e) precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." This statute precludes an inmate from bringing a civil action for emotional distress or mental suffering without showing a prior physical injury. *See Mitchell v. Horn*, 318 F.3d 523, 533 (3rd Cir. 2003); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *and Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). While this statutory provision is most frequently applied to conditions of confinement claims arising under the Eighth Amendment, it also precludes prisoner claims for emotional distress arising under other constitutional provisions, such as the First Amendment which guarantees religious freedom and access to the courts. *See Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir. 2001); *Merchant v. Hawk-Sawyer*, 37 Fed. Appx. 143, 145 (6th Cir.2002); *Williams v. Gobles*, 2000 WL 571936, at *2 (6th Cir. May 1, 2000).

Although § 1997e(e) does not define "physical injury," the case law reflects the view that, consistent with Eighth Amendment jurisprudence, the predicate injury need not be significant, but must be more than *de minimis*. *See Siglar v. Hightower*, 112 F.3d at 193 (physical injury required as predicate for emotional-distress claim must simply be more than de minimis); *see also Luong v. Hatt*, 979 F. Supp. 481, 485-86 (N. D. Tex.1997) (physical injury must be more than *de minimis* to satisfy § 1997e(e)). Baker's physical injury is less than *de minimis*; it is non-existent.

9

Thus, there is no basis for an emotional distress or depression claim relating to possible inability to obtain either a prison job or access to rehabilitative programs. That claim will be dismissed with prejudice for failure to state a claim upon which relief can be granted. 28 U.S.C.§ 1915 (e)(2)(ii).

### 4. Lack of Legal Assistance Claim and Motion for Appointment of Counsel

On the issue of legal representation regarding his civil claims, Baker states as follows:

> "I can not obtain any legal assistance from anyone familiar with approaching the courts in a manner suitable or in adequate manner that the Court requires. The legal aides are simply not filing motions and petitions in the correct form and this can be found inmost cases, not just at this institution..."

[Complaint, Record No. 2, p.5].

The Court construes this claim as one of alleged denial of access to the courts, falling under the First Amendment if the United States Constitution. To make a showing of denied of access to the courts, an inmate must demonstrate actual injury to an existing or contemplated litigation of a non-frivolous claim which challenges that inmate's sentence or his conditions of confinement. *See Lewis v. Casey*, 518 U.S. 343, 354-55 (1996).

Here, Baker has asserted approximately ten separate constitutional claims and has had no difficulty in expressing his claims. Baker has filed: (1) a detailed complaint in which he cleverly avoided any specifics relating to his administrative exhaustion efforts; (2) several well-articulated motions, (3) a thirty-four page motion for a preliminary injunction, and (4) has been instrumental in the organization of and filing of the affidavits of twenty-nine other inmates in support of his request for class action status.

10

In light of these facts, Baker has not established that he has experienced an actual injury to an existing or contemplated litigation of a non-frivolous claim which meets the *Lewis v. Casey* standards. Clearly, Baker has not been impeded from asserting numerous and detailed pleadings in this action. Baker has not stated a claim for denial of access to the courts. *See Haddix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999).

Baker seks the appointment of counsel [Record No. 6]. Baker alleges that due to the vast number of inmate-plaintiffs and claims being asserted in this action, appointment of counsel is warranted. As discussed, however, the Court has denied class action status in this proceeding and has limited the scope of this action solely to certain constitutional claims being asserted by Plaintiff Baker.

Counsel cannot be appointed and paid on this type of case pursuant to 28 U.S.C. § 1331. In a civil action such as this, the Court may only "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e). In determining whether to appoint counsel, the Sixth Circuit has explained:

> Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances. In determining whether exceptional circumstances exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues.

*Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993).

A district court exercises its discretion in evaluating these factors, and its decision will be reversed "only when the denial of counsel results in 'fundamental unfairness impinging on due process rights.'" *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992) (citations omitted).

11

Courts in the Sixth Circuit do not appoint counsel for *pro se* prisoners in civil cases absent truly extraordinary exceptional circumstances. *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996). *See also Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995) and *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995),

There are no exceptional circumstances in this case warranting the appointment of counsel in this case. Baker asserts claims typically raised by prisoner, such as food quality issues and the alleged inadequacy of medical treatment. Second, as noted, Baker has demonstrated a sufficient ability to represent himself in this matter, having filed a detailed complaint in which he articulated a long list of allegations and claims. For these reasons, the Court will deny Baker's motion to appoint counsel.

### 5. Phone Charges; Canteen Charges and Food Quality Claims

Baker's complaints about phone and canteen charges are somewhat difficult to follow. He appears to allege that the fees charged to prisoners are too expensive, and/or that he is not able to use "coupons" for both expenses. Additionally, Baker alleges that the food served to inmates at the LSCC is inadequate as to portion; is watered down, and lacks nutritional content.

In the context of prison conditions, the Cruel and Unusual Punishment Clause forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime ..." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L. Ed.2d 59 (1981). To succeed in an Eighth Amendment challenge, Plaintiff must establish that (1) a single, identifiable necessity of civilized human existence is being denied (objective prong) and (2) the defendant prison official acted with a sufficiently culpable

state of mind (subjective prong). *See*, e.g., *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L. Ed.2d 271 (1991); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir.2000).

The KDOC has promulgated a set of administrative regulations at 501 K.A.R. 6:020. These regulations, referred to as "Corrections Policies and Procedures" ("CPP"), govern prison procedures. CPP Number 14.6, entitled *Inmate Grievance Process*, explains the steps which state inmates are required to pursue in order to file a grievance.[5] The Court would benefit from reviewing documentation from Baker as to his efforts to administratively exhaust all three of these claims.[6] He will be instructed to provide that information to the Court.

### 6. Legal Mail Interference Claims

Baker alleges some LSCC officials have opened his incoming and outgoing legal mail, in his absence. He alleges that Defendants Warden Joseph Meko and KDOC Commissioner LaDonna Thompson are aware of this activity and have ignored it. The Court would benefit from reviewing documentation as to Baker's efforts to administratively exhaust these claims. He will be instructed to provide that information to the Court.

---

[5] The four-step process for non-health care types of grievances is found in CPP 14.6 § II (J)(1)-(4). Under this process, an inmate must file a written grievance and seek an Informal Resolution (§ II (J)(1) (a)and (b) ("**Step 1**"). If not satisfied there, he must make a written request that the Grievance Committee hold a hearing to consider his grievance ( § II (J)(2) ("**Step 2**"). If not satisfied with the Grievance Committee's disposition, he may appeal to the Warden. *See* § II (J)(3)("**Step 3**"). Finally, if not satisfied with the Warden's decision, an inmate may file an appeal to the KDOC. *See* § II (J)(4)("**Step 4**"). Time frames for appeals and responses are established within the regulation.

[6] Baker broadly alleges that prison officials have intentionally impaired and thwarted his efforts to grieve his claims. Baker does not allege if he attempted to file any grievances directly with the KDOC.

13

### 7. Denied Medical Treatment Claims

Baker alleges that he has been denied medical treatment for various conditions. Again, the Court would benefit from reviewing Baker's efforts to administratively exhaust each claim of denied medical treatment. He will be instructed to provide that information.

### 8. Motion for Permanent Injunctive Relief [Record No. 7]

Baker has filed a motion seeking a "Permanent Injunction" to prohibit the prison staff from engaging in the type of conduct about which he complains in this action, primarily the alleged refusal to provide medical treatment [Record No. 7]. Baker has attached the statements of the twenty-nine (29) other inmates at the LSCC.

A plaintiff seeking a permanent injunction must satisfy the following criteria:

> At the permanent injunction stage, the requirements for injunctive relief are success on the merits, irreparable harm, a balance of harms weighing in favor of the prevailing party, and public interest weighing in favor of the injunction.

*McCuiston v. Hoffa*, 351 F. Supp.2d 682, 689 (E. D. Mich.2005) (quoting 42 Am. Jur.2d Injunctions § 14).

The Sixth Circuit has defined the standard for a permanent injunction by holding that "where a plaintiff establishes a constitutional violation ... the plaintiff will be entitled to permanent injunctive relief upon a showing of: (1) a continuing irreparable injury if the court fails to issue the injunction, and (2) the lack of an adequate remedy at law." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir.2005).

In order to qualify for a permanent injunction, success on the merits must have been established. *See, e.g., Marcavage v. City of Detroit, Mich.*, 2008 WL 2980040, 1 (E. D. Mich., 2008); *Eller Media Co. v. City of Cleveland, Ohio*, 161 F. Supp.2d 796, 807 (N.D.Ohio,2001)

(". . .when a plaintiff seeks a permanent injunction, the plaintiff must show actual success on the merits, rather than a mere likelihood of success on the merits. *See Amoco Prod. Co. v. Village of Gambell, AK,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L. Ed.2d 542 (1987)").

The instant proceeding is in the early stages. No party has prevailed or "succeeded" on the merits. A "permanent" injunction is not warranted. Baker has not requested a temporary injunction. Assuming that his 33-page motion for a permanent injunction could be construed as a motion for a temporary injunction, the Court is not inclined to grant the motion.

There are four factors which a court considers in deciding if a preliminary injunction is warranted: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company,* 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers,* 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.,* 927 F.2d 900, 903 (6th Cir.), *cert. denied,* 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir. 1985)).

With regard to the first factor, Baker's likelihood of success on the merits is unknown for several reasons. First, some of Baker's claims are being dismissed in this Order. Clearly, he is entitled to no injunctive relief with respect to a claim that has been dismissed as lacking in merit. As to Baker's other claims, he has broadly alleged that he attempted to exhaust his numerous claims. He has not provided the Court with that documentation, but he is being instructed, in this Order, to provide that documentation.

Given that Baker has asserted numerous claims, it is possible that may have failed to exhaust some claims. If so, that failure will be revealed at some point. If Baker has failed to fully exhaust his claims, they would have to be dismissed without prejudice. If he has exhausted his claims, other defenses, such as statute of limitations or the unavailability of *respondeat superior*, might bar his claims on the merits. In summary, it is too premature to conclude that Baker has a substantial likelihood of success on the merits of any claims surviving this screening.

The second factor to consider is whether irreparable harm will ensue, absent the issuance of a temporary injunction. Baker alleges that he suffers from a myriad of medical conditions. The Court is unable to conclude that denial of injunctive relief subjects Baker to "irreparable harm," which is the standard.

Baker has been able to generate a substantial amount of pleadings in this case; assert a wide variety of detailed claims; orchestrate lengthy filings by his fellow inmates, and complain in those detailed filings about issues unrelated to his health, such as his alleged inability to use a coupon at the canteen or for phone access. His ability to litigate all of these detailed claims weakens his claim that he has physically deteriorated to the point where his life in danger and that he is unable to function without emergency judicial intervention.

As to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). The Supreme Court has explicitly rejected heightened judicial scrutiny of prison policies. Rigorous scrutiny, the Court noted, is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." *Thornburgh v. Abbott*, 490 U.S. 401,

409-10, 109 S. Ct. 1874 (1989). "Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Turner v. Safley*, 482 U.S. at 89.

Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. at 562. For this reason, the Court is not convinced that the public interest would be served by interfering with the LSCC's administrative decisions concerning Baker.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows;

(1) The Clerk of the Court is directed to change, in the ECF docket sheet, the name of the Attorney General of Kentucky from "Jack Conley" to "Jack Conway."

(2) Plaintiff Connie Dale Baker's Request for Class Action Status [Record No. 2] is **DENIED**.

(3) Plaintiff Connie Dale Baker will not be permitted to assert constitutional claims on behalf of other LSCC inmates.

(4) Plaintiff Connie Dale Baker's "Motion for Appointment of Counsel" [Record No. 6] is **DENIED**.

(5) Plaintiff Connie Dale Baker's "Motion for Permanent Injunction" [Record No. 7] is **DENIED**.

(6) Plaintiff Connie Dale Baker's First Amendment retaliation claim is

**DISMISSED WITH PREJUDICE.**

(7) Plaintiff Connie Dale Baker's First Amendment denial of access to the courts claim is **DISMISSED WITH PREJUDICE.**

(8) Plaintiff Connie Dale Baker's Eighth Amendment claims relating to depression from alleged inability to participate in rehabilitative programs are **DISMISSED WITH PREJUDICE.**

(9) With respect to Baker's claims regarding:

(a) excessive phone charges/ inability to use coupons;

(b) Excessive canteen charges/ inability to use coupons;

(c) food quality claims, and

(d) all asserted medical claims (denial of medical treatment for back, liver (Hepatitis C), legs, feet, heart, oversized hernia, lung, dental, and sleeping problems)

Baker is directed to file, within thirty (30) days of the date of entry of this Order, the copies of all grievances, requests, appeals, or other documents that he lodged about these claims, *and* all responses received from the prison as to each claim outlined above, including any and all grievance steps pursued with the Kentucky Department of Corrections (KDOC).

This November 12, 2008.



Signed By:
<u>Henry R Wilhoit Jr.</u>
**United States District Judge**